UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMAZON.COM, INC. and AMAZON LOGISTICS, INC., | Case No. |
| Petitioners, | |
| v. | |
| STEVE EISENBERG and ASHLEY ROBERTSON, | |
| Respondents. | |

## **BRIEF IN SUPPORT OF PETITION TO COMPEL ARBITRATION**

Jennifer B. Orr, Bar No. 0084145
jorr@littler.com

LITTLER MENDELSON, P.C.
Key Tower
127 Public Square
Suite 1600
Cleveland, OH  44114-9612
Telephone:216.696.7600
Facsimile: 216.696.2038

*Counsel for Petitioners*

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................................. 2

    A.    Amazon Flex and the Terms of Service .................................................. 2

    B.    Respondents' disputes with Amazon ....................................................... 4

III.   ARGUMENT ...................................................................................................... 5

    A.    Respondents agreed to arbitrate their disputes with Amazon. ................ 6

    B.    The FAA requires enforcing Respondents' arbitration agreement. ........ 7

         1.    Respondents belong to the class of local delivery drivers. .......... 8

         2.    Respondents' local deliveries do not constitute engagement in foreign or interstate commerce within the meaning of the FAA exemption. ................................................................................... 11

    C.    State law requires enforcing Respondents' agreement. ........................ 13

IV.   CONCLUSION ................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amos*, 2022 WL 2181448, at *4-5 ................................................................15

*Bacashihua v. U.S. Postal Serv.*,
    859 F.2d 402 (6th Cir. 1988) ...............................................................8

*Banks v. Jennings*,
    2009-Ohio-5035, 184 Ohio App. 3d 269, 920 N.E.2d 432 ..................14

*Bean v. ES Partners, Inc.*,
    533 F. Supp. 3d 1226 (S.D. Fla. 2021) ...............................................8

*Bissonnette v. LePage Bakeries Park St., LLC*,
    601 U.S. 246 (2024) ...........................................................1, 7, 11, 13

*Caremark, LLC v. Chickasaw Nation*,
    43 F.4th 1021 (9th Cir. 2022) ............................................................6

*Carter O'Neal Logistics, Inc. v. FedEx Ground Package Sys., Inc.*,
    No. 17-cv-2799, 2020 WL 13111153 (W.D. Tenn. Mar. 19, 2020) ..............2, 13

*CenTra, Inc. v. Estrin*,
    538 F.3d 402 (6th Cir. 2008) ...........................................................14

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) .......................................................................1, 7, 8

*Cole v. Burns Int'l Sec. Servs.*,
    105 F.3d 1465 (D.C. Cir. 1997) ........................................................13

*Davidson v. Hensen*,
    954 P.2d 1327 (Wash. 1998) ............................................................15

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ...........................................................................7

*DePhillips v. Zolt Constr. Co.*,
    959 P.2d 1104 (Wash. 1998) ..............................................................6

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ...........................................................................6

*Green v. U.S. Xpress Enters., Inc.*,
    434 F. Supp. 3d 633 (E.D. Tenn. 2020) ............................................13

*Hamrick v. Partsfleet, LLC*,
    1 F.4th 1337 (11th Cir. 2021) ...................................................................1, 11, 12

*Harper v. Amazon.com Servs., Inc.*,
    12 F.4th 287 (3d Cir. 2021) ...............................................................2, 13, 14, 15

*Harper v. Amazon.com Servs. Inc.* (*Harper II*),
    No. 19-cv-21735, 2022 WL 17751465 (D.N.J. Dec. 19, 2022)....................2, 14, 15

*Immediato v. Postmates, Inc.*,
    54 F.4th 67 (1st Cir. 2022)................................................................................12

*Lopez v. Cintas Corp.*,
    47 F.4th 428 (5th Cir. 2022) ...................................................................1, 9, 11, 13

*Marchbanks v. Ice House Ventures, L.L.C.*,
    2023-Ohio-1866, 171 Ohio St. 3d 637, 219 N.E.3d 933 ...................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...........................................................................................6

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022)...........................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...............................................................................................6

*Nunes v. LaserShip, Inc.*,
    No. 22-cv-2953, 2023 WL 6326615 (N.D. Ga. Sept. 28, 2023).........................1, 13

*O'Bryant v. Flowers Foods, Inc.*,
    629 F. Supp. 3d 377 (D.S.C. 2022)...............................................................2, 12, 13

*O'Shea v. Maplebear Inc.*,
    508 F. Supp. 3d 279 (N.D. Ill. 2020) ................................................................12

*Pettie v. Amazon.com, Inc.*,
    No. CIVDS1908923, 2023 WL 4035015 (Cal. Super. Ct. May 25, 2023)...................9, 11, 13

*Rittmann et al. v. Amazon.com Inc. et al.*,
    No. 2:16-cv-1554 (W.D. Wash. Feb. 1, 2023), ECF No. 262, ¶¶ 40–41 .........................4, 5, 15

*Rittmann v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021)...............................4, 8, 15

*Sheppard v. Staffmark Inv., LLC*,
    No. 20-cv-5443, 2021 WL 690260 (N.D. Cal. Feb. 23, 2021)................................8

*Sw. Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) ................................................................................................. *passim*

*Textile Unlimited, Inc. v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001) .................................................................................. 5

*Tillman Transp., LLC v. MI Bus. Inc.*,
    95 F.4th 1057 (6th Cir. 2024) .............................................................................. 1, 8

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009) ................................................................................................ 5

*W.L. Byers Trucking, Inc. v. Falcon Transp. Co.*,
    No. 09-cv-342, 2010 WL 3724895 (N.D. Ind. Sept. 17, 2010) ............................ 14

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020) ............................................................................ 8, 9, 15

*Wallace v. Grubhub Holdings, Inc.*,
    970 F.3d 798 (7th Cir. 2020) ................................................................................. 12

*Young v. Shipt, Inc.*,
    563 F. Supp. 3d 832 (N.D. Ill. 2021) ................................................................... 12

**Statutes**

9 U.S.C. § 1 .............................................................................................................. 7

9 U.S.C. § 2 ........................................................................................................... 7, 8

9 U.S.C. § 3 ........................................................................................................... 5, 6

9 U.S.C. § 4 ..................................................................................................... *passim*

28 U.S.C. §§ 1331 and 1367 ...................................................................................... 5

28 U.S.C. § 1391 ....................................................................................................... 5

29 U.S.C. § 216(b) .................................................................................................... 4

Ohio Rev. Code § 2711.01 ...................................................................................... 14

Wash. Rev. Code § 7.04A.070 ............................................................................... 15

## I.        INTRODUCTION

When Respondents Steve Eisenberg and Ashley Robertson signed up to perform local deliveries through the Amazon Flex program, they agreed to arbitrate on an individual basis. Yet now they seek to litigate claims against Amazon in a collective action in Washington. The Court should compel Respondents to pursue individual arbitration under 9 U.S.C. § 4, in accordance with the terms of their agreements.

Amazon anticipates Respondents will try to escape their agreements by invoking Section 1 of the Federal Arbitration Act ("FAA"). That provision exempts from the FAA's usual coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Any attempt to invoke this exemption would fail. The Supreme Court has repeatedly recognized this exemption's "narrow" scope. *See Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (citation omitted); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001); *see also Tillman Transp., LLC v. MI Bus. Inc.*, 95 F.4th 1057, 1061 (6th Cir. 2024) ("The Supreme Court has construed this provision narrowly 'with reference to the statutory context in which it is found and in a manner consistent with the FAA's purpose.'"). The exemption is confined to classes of workers "actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (citation and quotation marks omitted). Amazon Flex Delivery Partners, including Respondents, do not meet that description. Their activity is not the transportation of goods across state or national borders through the channels of interstate commerce as defined by the FAA, but local delivery. Respondents are not exempt from the FAA merely because *other classes of workers* may have previously transported the goods across state lines. *See, e.g.*, *Lopez v. Cintas Corp.*, 47 F.4th 428, 432 (5th Cir. 2022); *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1349-51 (11th Cir. 2021); *Nunes v. LaserShip, Inc.*, No. 22-cv-2953, 2023 WL

6326615, at *2-3 (N.D. Ga. Sept. 28, 2023); *O'Bryant v. Flowers Foods, Inc.*, 629 F. Supp. 3d 377, 388-89 (D.S.C. 2022).

And even if Respondents' agreements were exempt from the FAA, they would still be binding, valid, and enforceable under state law. *See, e.g.*, *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 294 (3d Cir. 2021) (explaining that even when the FAA Section 1 exemption applies, "the parties still have an agreement to arbitrate, and if federal law does not govern the arbitrability of their contract, *some* law must."); *Carter O'Neal Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, No. 17-cv-2799, 2020 WL 13111153, at *5 (W.D. Tenn. Mar. 19, 2020) ("[M]any lower courts … have held that the FAA § 1 exemption does not preempt enforcement of an arbitration agreement under state law."). Indeed, another federal court recently held that Respondents Amazon Flex agreement is enforceable under state law, regardless of whether the FAA exemption applies. *Harper v. Amazon.com Servs. Inc.* (*Harper II*), No. 19-cv-21735, 2022 WL 17751465, at *7 (D.N.J. Dec. 19, 2022) (compelling arbitration under Washington and/or New Jersey law). Whether under federal or state law, the Court should compel Respondents to arbitrate as their agreements requires.

## II.     FACTUAL BACKGROUND

### A.      Amazon Flex and the Terms of Service

Affiliates of Amazon.com, Inc. sell products through a variety of channels, including the Amazon.com website, mobile applications, and retail locations like Whole Foods Market. *See* Declaration of John Rodgers ("Rodgers Decl."), ¶¶ 4-5. Amazon Logistics, Inc. contracts with third-party contractors—including individual independent contractor "Delivery Partners" who, like Respondents, sign up to become eligible to perform delivery blocks through a smartphone application-based program called Amazon Flex. *Id.* ¶¶ 3, 6. Amazon Flex Delivery Partners use personal vehicles to make local deliveries of groceries, food, and other goods to customers. *Id.*

2

¶¶ 6, 11-21. For example, Respondents have performed Amazon Flex deliveries in the Cleveland area. *Id.* ¶ 28. To sign up with Amazon Flex, a prospective Delivery Partner must download the Amazon Flex app, create an account, select a local area in which they wish to make deliveries, and accept the Amazon Flex Independent Contractor Terms of Service ("TOS"). *Id.* ¶¶ 20-21. Numerous versions of the TOS have governed at various times since the Amazon Flex program began. *Id.* ¶ 22.

In signing up to become eligible to make Amazon Flex deliveries, Respondents clicked a button signifying that they accepted the then-applicable version of the TOS. *Id.* ¶¶ 23, 25-26. After clicking that button, they saw a new screen and clicked a second button stating that they agreed to arbitrate. *Id.* ¶ 27. Respondent Eisenberg accepted the then-applicable version of the TOS, Version 10, on May 25, 2017, and Respondent Robertson accepted the same Version 10 of the TOS on May 22, 2017. *Id.* ¶ 23.

Section 11(a) of the TOS is a broad, mutual agreement to arbitrate:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT OR TRIAL BY JURY, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES.

TOS § 11(a). Under the agreement, "[t]he arbitration will take place at a mutually-convenient location within 45 miles from the last location in which you provided Services." TOS § 11(i).

Section 12 is the TOS's "Governing Law" provision. It states that the parties generally chose Washington law to govern the contract, although they intended for the arbitration provision to be governed by the FAA and federal law. TOS § 12. The contract's severability provision states, "If any provision of this Agreement is determined to be unenforceable, the parties intend that this

3

Agreement be enforced as if the unenforceable provisions were not present and that any partially valid and enforceable provisions be enforced to the fullest extent permissible under applicable law." TOS § 16.

    **B.**    **Respondents' disputes with Amazon**

The dispute underlying this proceeding arises from a putative collective action against Amazon under the federal Fair Labor Standards Act ("FLSA") and putative class claims under related state-law theories. *See Rittmann et al. v. Amazon.com Inc. et al.*, No. 2:16-cv-1554 (W.D. Wash. Feb. 1, 2023) ("*Rittmann* Dkt."), ECF No. 262, ¶¶ 40–41. Rather than comply with their agreements to arbitrate and pursue their allegations in arbitration, Respondents joined the *Rittmann* action as opt-in plaintiffs using the FLSA's mechanism for a collective action. *See* 29 U.S.C. § 216(b) (under the FLSA, an opt-in plaintiff becomes "a party plaintiff to any such action [when] he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

Amazon previously moved to compel a named plaintiff in *Rittmann* (Raef Lawson) to arbitrate his claims. *See Rittmann* Dkt., ECF No. 36. In 2019, the district court in *Rittmann* declined to compel arbitration under the FAA and Washington state law, and the Ninth Circuit affirmed. *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021). Through successive amended complaints, consolidations, and opt-in notices, the number of plaintiffs in the case has swelled to more than 100, including plaintiffs with different arbitration agreements than the agreement considered in 2019. The *Rittmann* district court litigation has been stayed a total of 2,343 days (more than 6.4 years)—and therefore, despite its age, it is at an early stage of the proceedings. Recently, on May 14, 2024, the district court entered a scheduling order allowing Amazon to renew its motion to compel arbitration at an undetermined future date. *Rittmann* Dkt., ECF no. 298. As this history shows, the question of whether plaintiffs in *Rittmann*

must arbitrate their claims remains unresolved for many plaintiffs in the case, including Respondents here.

Amazon now respectfully petitions to compel arbitration of Respondents' claims against Amazon. This Court has federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. *See Vaden v. Discover Bank*, 556 U.S. 49, 62, 69 n.18 (2009). Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 4. The FAA permits any party "aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition "any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement" and requires that the arbitration "be within the district in which the [Section 4] petition … is filed." 9 U.S.C. § 4. The arbitration agreement here authorizes arbitration "at a mutually-convenient location within 45 miles from the last location in which you provided Services." TOS § 11(i). Because Respondents most recently provided services within this District, that arbitration location is within this Court's jurisdiction, and an order compelling arbitration by this Court would enforce terms of the arbitration agreement. In contrast, the district court in *Rittmann* lacks the authority to compel arbitration within this District; its authority under Ninth Circuit precedent is limited to staying litigation of Respondents' arbitrable claims under 9 U.S.C. § 3 or compelling arbitration within the Western District of Washington. *See, e.g.*, *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (stating that Section 4 "does not require that the petition be filed where the contract specified that arbitration should occur," but does "confine[] the *arbitration* to the district in which the petition to compel is filed").

## III.    ARGUMENT

The FAA adopts a "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). To further that policy, the FAA provides "two parallel devices for enforcing an

arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The first device is a motion under Section 3 of the FAA, which allows a party to seek "a stay of litigation in any case raising a dispute referable to arbitration." *Id.*; *see* 9 U.S.C. § 3. The second device is a petition under Section 4 of the FAA, which allows the party to affirmatively seek "an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. A court may grant a Section 4 petition and compel the respondent to arbitrate when, as here, the respondent has sued the petitioner in another forum. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1027-28, 1034 (9th Cir. 2022) (affirming final order granting Section 4 petition filed in Arizona by defendant in litigation in Oklahoma).

    **A.**      **Respondents agreed to arbitrate their disputes with Amazon.**

    The first task of a court asked to compel arbitration is to determine whether the parties have a valid arbitration agreement. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To do so, the Court should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

    Under any potentially applicable body of state law, Respondents formed a binding contract by accepting the version of the TOS that governed when they signed up with the program, Version 10. That agreement provides that it is generally governed by Washington law, and Respondents signed up and performed services in Ohio. The requirements for contract formation under Washington law do not differ in any material way from the requirements under Ohio law: both states require offer and acceptance (*i.e.*, assent), plus consideration. *See, e.g.*, *Marchbanks v. Ice House Ventures, L.L.C.*, 2023-Ohio-1866, 171 Ohio St. 3d 637, 643, 219 N.E.3d 933, 939 (identifying the basic requirements for contract formation under Ohio law); *DePhillips v. Zolt Constr. Co.*, 959 P.2d 1104, 1107 (Wash. 1998) (same under Washington law). Respondents

manifested assent to the TOS by clicking buttons signifying acceptance of the agreement as a whole and agreement to arbitrate. *See supra* p. 3; Rodgers Decl. ¶¶ 20, 22-24.

When the parties have agreed to arbitrate, courts often ask next whether the agreement encompasses the present dispute. If so, the court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. § 4 ("the court shall make an order directing the parties to proceed to arbitration"). Here, there is no genuine doubt about whether the TOS arbitration provision extends to Respondents' wage-and-hour claims. Respondents seek to contest their classification as independent contractors in the Amazon Flex program, on the premise that they should be classified as employees instead. These claims and disputes readily qualify as claims or disputes "arising out of or relating in any way to [the TOS] … , to [Respondents'] participation in the [Amazon Flex] Program or to [their] performance of Services." TOS § 11(a) (some capitalization omitted).

### B.      The FAA requires enforcing Respondents' arbitration agreement.

The FAA governs Respondents' obligation to arbitrate pursuant to the TOS choice-of-law provision. TOS § 12. And even apart from the contracts' choice-of-law provision, the FAA's basic coverage generally extends to arbitration agreements in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Amazon Flex transactions involve interstate commerce within the meaning of Section 2 because Section 2's use of the phrase "involving commerce" expresses Congress's "intent to regulate to the full extent of its commerce power." *Cir. City*, 532 U.S. at 114.

Respondents' only potential argument against applying the FAA relies on the statute's carveout for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has repeatedly instructed that the Section 1 exemption has a "'narrow' scope," *Bissonnette*, 601 U.S. at 256 (citation omitted), because it is written using more restrictive phrasing ("engaged in foreign

or interstate commerce") than the expansive language of Section 2 ("involving commerce"), *see Cir. City*, 532 U.S. at 115-16. The Sixth Circuit has similarly underscored the narrowness of the exemption. *See Tillman Transp.*, 95 F.4th at 1062 ("We generally endorsed a narrow construction of Section 1 based on the statute's language and Congress's apparent intent, holding that it should only 'apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are.'" (quoting *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-01 (6th Cir. 1995)). "This accords 'with the underlying purpose of the Act, which is to favor arbitration.'" *Id.* (quoting *Asplundh*, 71 F.3d at 601).[1]

Although some courts have erroneously determined that the Amazon Flex TOS falls within the exemption, *see Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020), the analysis in those cases departs from Supreme Court precedent and the weight of better-reasoned authority.

### 1.    Respondents belong to the class of local delivery drivers.

In 2022, the Supreme Court explained that when evaluating the FAA exemption's applicability, the Court "begin[s] by defining the relevant 'class of workers' to which [the individual worker] belongs." *Saxon*, 596 U.S. at 455. Importantly, this post-*Rittmann* and

---

[1] Several decades ago, the Sixth Circuit opined (arguably in dicta) that "postal workers" as an undifferentiated class are engaged in interstate commerce for purposes of the FAA, relying on an earlier Eleventh Circuit case. *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) (citing *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 823 F.2d 466, 473 (11th Cir. 1987)). Those two cases on postal workers predate all of the U.S. Supreme Court's rulings on the FAA exemption and conflict with those rulings in multiple ways—as explained by courts that have recently addressed those authorities. *See, e.g.*, *Bean v. ES Partners, Inc.*, 533 F. Supp. 3d 1226, 1233 (S.D. Fla. 2021) (explaining that *American Postal Workers* does not survive the Supreme Court's decision in *Circuit City*); *Sheppard v. Staffmark Inv., LLC*, No. 20-cv-5443, 2021 WL 690260, at *5 (N.D. Cal. Feb. 23, 2021) ("Plaintiff's reliance on [*Bacashihua*] and *American Postal Workers* . . . to support that she, a postal worker, qualifies as a transportation worker is not persuasive as both cases predate the Supreme Court's ruling in *Circuit City*.").

*Waithaka* guidance requires focusing on *the workers' own activities*. The worker in *Saxon* was a Southwest Airlines "ramp supervisor" who frequently loaded cargo onto outbound aircraft and unloaded cargo from inbound aircraft. *Id.* at 456. Although she asked the Supreme Court to define the relevant class of workers based on the business of her employer, Southwest argued that the class of workers should be defined "based on *their* conduct, not their *employer's*." *Id.* at 455-56 (citation omitted). *Saxon* adopted Southwest's worker-centered approach, explaining that the plaintiff was "a member of a 'class of workers' based on what she does at Southwest, not what Southwest does generally." *Id.* at 456. It defined the class there as "workers who physically load and unload cargo on and off airplanes on a frequent basis." *Id.*

Respondents belong to a class of local delivery drivers. *See, e.g.*, *Lopez*, 47 F.4th at 430-32 (concluding that under *Saxon*'s framework, a self-described "last-mile driver" belonged to a class of "local delivery drivers"); *Pettie v. Amazon.com, Inc.*, No. CIVDS1908923, 2023 WL 4035015, at *1 (Cal. Super. Ct. May 25, 2023) ("Unlike the workers at issue in *Saxon*, who had a direct role in interstate commerce, Amazon Flex delivery drivers more perform the role of local delivery drivers, similar to those at issue in *Lopez*[.]"). Respondents and other Amazon Flex delivery partners used ordinary vehicles, like their own cars, to deliver customer orders within a local area during "delivery blocks" that typically last between two to six hours. Rodgers Decl. ¶¶ 11, 21. Amazon Flex deliveries have often included goods that are already in the same state as the customer at the time they are ordered—including grocery and food orders from Whole Foods Market stores and restaurants, goods picked up from other retail stores, and items available for fast, same-day delivery. *Id.* at ¶¶ 12-14. Some Amazon Flex Delivery Partners have also picked up "brown box" packages of items warehoused in Amazon fulfillment centers. *Id.* ¶ 15. Even in this last category, the goods were often in the same state as the customer at the time of the order.

*Id.* ¶ 16. And when they were not, the Amazon Flex Delivery Partners played no role in the long-haul transportation of those goods across state lines. Several distinct classes of workers engaged in that long-haul interstate transportation by loading the airplanes and/or tractor-trailers, piloting or driving them, and unloading them. *Id.* ¶¶ 10, 16. Another class of workers sorted and batched the goods after the long-haul transportation concluded. *Id.* ¶ 16. And even when the goods had to cross state lines to get from an out-of-state fulfillment center to an in-state location, there was still generally at least one, and often more than one, wholly intrastate journey between the in-state sort center and the in-state delivery station, with more loading and unloading, batching and rebatching along the way by yet other distinct classes of workers. *Id.* ¶¶ 16-17. The activities of these multiple other classes of workers occurred *before* Amazon Flex Delivery Partners like Respondents picked up the batch of items for their delivery block, loaded those items into their cars, and took them short distances to local customers. *Id.* ¶¶ 18-19. Amazon Flex Delivery Partners did not interact with the workers or vehicles that transport the goods across state lines. *See id.* ¶¶ 19-20. Amazon Flex Delivery Partners are thus local delivery drivers for FAA purposes who are many steps removed from any long-distance transportation across borders.

Respondents may argue that they belong to a class of "last-mile drivers" rather than a class of local delivery drivers. It would be error, however, to define the FAA class of workers that way. The concept of last-mile drivers presupposes that the drivers perform the last leg of a broader journey also involving other classes of workers and thus would incorporate, in the class-of-workers definition, the activities of distinct workers merely because they perform transportation-related tasks for the same overarching business. In this way, the "last-mile" label relies on the broader activities of the company for which the workers perform their activities, contrary to *Saxon*'s

instruction to focus on the actual work of the class of workers themselves. *See Saxon*, 596 U.S. at 456. The appropriate class definition is local delivery drivers.

> ### 2. Respondents' local deliveries do not constitute engagement in foreign or interstate commerce within the meaning of the FAA exemption.

The next question is "whether that class of workers is 'engaged in foreign or interstate commerce'" within the meaning of the FAA exemption. *Saxon*, 596 U.S. at 455. To meet that description, the class of workers must "play a *direct and necessary role* in the free flow of goods *across borders*" and "be *actively engaged* in transportation of those goods *across borders* via the channels of foreign or interstate commerce." *Id.* at 458 (citations and quotation marks omitted); *see also Bissonnette*, 601 U.S. at 256.

Once again, *Lopez* is instructive. The Fifth Circuit recognized that local delivery drivers lack "a 'direct and necessary role' in the transportation of goods across borders" and are not "actively engaged in transportation of those goods across borders." *Lopez*, 47 F.4th at 433. Under *Saxon*'s test, it makes no difference whether the goods have "arrived at the warehouse from out of state." *Id.* at 430. That is because "once the goods arrived at the [in-state] warehouse and were unloaded, anyone interacting with those goods was no longer engaged in interstate commerce." *Id.*; *see also Pettie*, 2023 WL 4035015, at *1 (holding that Amazon Flex Delivery Partners are not exempt from the FAA under *Saxon* and *Lopez*).

Even before *Saxon*, the Eleventh Circuit similarly limited the FAA exemption to classes of workers who "'actually engage' in the transportation of goods in interstate commerce." *Hamrick*, 1 F.4th at 1346 (citation omitted). The plaintiffs in *Hamrick* were "final-mile delivery drivers— drivers who make local deliveries of goods and materials that have been shipped from out-of-state to a local warehouse." *Id.* at 1340. They argued "that drivers performing intrastate trips" are engaged in interstate commerce for purposes of 9 U.S.C. § 1 if "they transport items which had

been previously transported interstate." *Id.* at 1346. The Eleventh Circuit rejected that argument. It explained that the text of 9 U.S.C. § 1 "focus[es] on what a class of *worker* must be engaged in doing and not the *goods*." *Id.* at 1349; *id.* at 1350 ("Section one is directed at what the class of workers is engaged in, and not what it is carrying."); *id.* at 1351 (holding that it was "error" for the district court to "conclude[] that the drivers fell within the transportation worker exemption because 'the goods at issue in this case originated in interstate commerce and were delivered, untransformed, to their destination'" and because the "deliveries . . . were 'from out of state merchants delivering to customers in the local area'" (brackets omitted)). Thus, the exemption "requir[es] that the class of workers actually engages in the transportation of persons or property between points in one state (or country) and points in another state (or country)." *Id.*; *see also O'Bryant*, 629 F. Supp. 3d at 388-89 (following *Hamrick* to conclude that plaintiff could not "use his intrastate delivery of goods that were produced out of state and previously moved across state lines to satisfy the 'interstate activity' prong of the [Eleventh Circuit's] test").

Numerous cases have properly held that local delivery drivers who perform the sorts of activities that Amazon Flex Delivery Partners perform are not exempt from the FAA. The Seventh Circuit, for example, held that delivering food items from local restaurants does not trigger the exemption. *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020). Many courts have observed that the same reasoning extends to making deliveries from local grocery or retail stores. *See, e.g.*, *Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022); *Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 839 (N.D. Ill. 2021); *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 285-86 (N.D. Ill. 2020). Many Delivery Partners engage in precisely those activities. *See* Rodgers Decl. 12-13. Even for so-called last-mile deliveries of items previously shipped using other classes of workers from out of state, making only the local delivery to the end customer does not trigger the

exemption as properly construed. *See, e.g.*, *Lopez*, 47 F.4th at 433; *O'Bryant*, 629 F. Supp. 3d at 388-89; *Nunes*, 2023 WL 6326615, at *3; *Pettie*, 2023 WL 4035015, at *1.

The Supreme Court's recent decisions on the FAA exemption—while not explicitly resolving the status of local delivery drivers under the FAA—further support these cases' focus on the local nature of the work the delivery drivers perform, rather than the location history of the delivered goods. In *Saxon*, the Court rejected the plaintiff's preferred industrywide approach that would apply the exemption based on the broader activities of the company for which the workers perform their activities, rather than the activities of the workers themselves. 596 U.S. at 455-56. And the Supreme Court reinforced this workers-centered approach in *Bissonnette*, 601 U.S. at 253-54, 256. In doing so, the Court easily rejected the suggestion that the exemption could extend to all workers who handle goods that "move in interstate commerce." *Id.* at 256.

Respondents do not belong to a class of workers that "directly," *Saxon*, 596 U.S. at 457, or "actively" engages in the transportation of goods across state borders within the meaning of 9 U.S.C. § 1, *Bissonnette*, 601 U.S. at 256 (citation omitted). So their arbitration agreement are not exempt from the FAA, and Section 4 of the FAA requires that their agreements be enforced.

### C.    State law requires enforcing Respondents' agreement.

Even when an arbitration agreement falls outside the scope of the FAA, it may still be enforceable under state law. *See, e.g.*, *Harper*, 12 F.4th at 295 (even if the FAA is inapplicable, that "does not mean all state law about arbitration vanishes"); *Carter O'Neal Logistics*, 2020 WL 13111153, at *5 (compelling arbitration under Pennsylvania law without resolving applicability of FAA exemption); *Green v. U.S. Xpress Enters., Inc.*, 434 F. Supp. 3d 633, 644 (E.D. Tenn. 2020) (compelling arbitration under Tennessee arbitration law because the FAA was inapplicable); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[E]ven if an arbitration agreement is outside the FAA, the agreement still may be enforced.").

Although choice of law ordinarily is a threshold issue before a substantive analysis, the choice between the potentially applicable state laws here—Ohio and Washington—is immaterial. Arbitration would be compelled under either state's laws. *See, e.g.*, *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (explaining that a comprehensive conflict-of-laws analysis is not necessary if the possible sources of law are consistent).

First, the TOS is enforceable here under the law of Ohio, the forum state and the state in which Respondents provided their Amazon Flex local delivery services. *See Harper v. Amazon.com Servs. Inc.* (*Harper II*), No. 19-cv-21735, 2022 WL 17751465, at *9 (D.N.J. Dec. 19, 2022) (compelling New Jersey Amazon Flex Delivery Partner to arbitrate under New Jersey law as an alternative holding); *see* Rodgers Decl. ¶ 28. Ohio workers who are potentially exempt from the FAA can be compelled to arbitrate under Ohio law. *W.L. Byers Trucking, Inc. v. Falcon Transp. Co.*, No. 09-cv-342, 2010 WL 3724895, at *4 (N.D. Ind. Sept. 17, 2010). Ohio has a statute that broadly requires enforcing arbitration agreements, much like the FAA's. Ohio Rev. Code § 2711.01; *cf. Banks v. Jennings*, 2009-Ohio-5035, ¶ 13, 184 Ohio App. 3d 269, 274, 920 N.E.2d 432, 436 ("An agreement to arbitrate contractual disputes is favored by public policy."). Thus, even if the FAA exemption applies to the TOS, Ohio law provides an independent basis for compelling Respondents to arbitration.

Second, the TOS is enforceable under the law of Washington through its choice-of-law provision. In the *Harper* litigation, the Third Circuit remanded the case to the district court so it could determine whether the Amazon Flex TOS—the same agreement at issue here—was enforceable under state law. The district court determined that the answer was yes and held that the TOS's "arbitration agreement is valid and enforceable under Washington law." *Harper II*, 2022 WL 17751465, at *7, *9. It was appropriate to apply Washington law to compel arbitration

14

because of the agreement's severability provision in Section 16: were the contract truly unenforceable under the FAA, "the portion of the governing law section which states that the 'FAA and applicable federal law' govern the dispute resolution section of the Agreement is severed." *Id.* at *8. "What remains is an express choice of Washington law to govern the 'interpretation of the Agreement.'" *Id.* Much like federal law with the FAA, Washington has a statute and public policy requiring enforcement of arbitration agreements and no transportation-worker carveout. Wash. Rev. Code § 7.04A.070; *e.g.*, *Davidson v. Hensen*, 954 P.2d 1327, 1330 (Wash. 1998) ("Washington law generally favors the use of alternative dispute resolution such as arbitration where the parties agree by contract to submit their disputes to an arbitrator."). Even if the FAA exemption applies to the TOS, then, the Court can and should compel arbitration under Washington law like the court in *Harper II. See also Amos*, 2022 WL 2181448, at *4-5 (enforcing a different Amazon arbitration agreement under Washington law without deciding whether the FAA exemption applied).[2]

## IV.  CONCLUSION

For all these reasons, this Court should compel Respondents to arbitrate their disputes within this District on an individual basis in accordance with the terms of their agreements.

---

[2] In *Rittmann*, the Ninth Circuit construed the choice-of-law provision in this version of the TOS as foreclosing application of Washington law and further held that "there is no law that governs the arbitration provision." *See* 971 F.3d at 920-21. Other courts have correctly rejected those views. *See Waithaka*, 966 F.3d at 27 (holding that Washington law governs this TOS arbitration provision if the FAA is inapplicable); *Harper II*, 2022 WL 17751465, at *8 (agreeing with *Waithaka* on this issue); *Harper I*, 12 F.4th at 294 ("[I]f federal law does not govern the arbitrability of [this] contract, *some* law must.").

Dated: June 14, 2024

Respectfully submitted,

*/s/ Jennifer B. Orr*
Jennifer B. Orr, Bar No. 0084145
jorr@littler.com

LITTLER MENDELSON, P.C.
Key Tower
127 Public Square
Suite 1600
Cleveland, OH  44114-9612
Telephone:     216.696.7600
Facsimile:     216.696.2038

Michael E. Kenneally (pro hac vice application
forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:     202.739.3000
Facsimile:     202.739.3001

Counsel for Petitioners

*Counsel for Petitioners*

4889-7590-8808.1 / 114766-1000

16